h SULLIVAN, Judge.
On September 16, 1998, the Defendants, Advanced Recycling, Inc., James G. Trumps, and Robert Parker, were charged by grand jury indictment with theft of monies valued over $500.00, a violation of La.R.S. 14:67, and filing false public records, a violation of La.R.S. 14:133. On September 21, 1998, Defendants entered a joint written plea of not guilty. On July 27, 1999, the State filed an amended bill of information to charge Defendants with filing or maintaining false public records.
Defendants are in the business of recycling. Their business collects and disposes of recyclable items, including tires. Their disposition of off-the-road tires (OTRs) and the requirements of the Solid Waste Recycling and Reduction Act (SWRRA), La. R.S. 30:2411-2423, and/or Department of Environmental Quality (DEQ) regulations contained in Louisiana Administrative Code (LAC) 33:VII § 10501, et seq., are at issue herein. Defendants filed a motion to quash, seeking to have the maintaining false public records portion of the amended charge dismissed. The trial court granted the motion, determining that the records at issue, OTRs manifests, were not public records within the meaning of La. R.S. 14:133. The State appeals, arguing that LAC 33:VII § 10533 requires Defendants to prepare OTRs manifests and maintain them at their business office; *422 therefore, they are public records under La.R.S. 14:133.
La.R.S. 14:133 provides in part:
A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
(1) Any forged document.
(2) Any wrongfully altered document.
| ?.(3) Any document containing a false statement or false representation of a material fact.
(Emphasis added.)
Public records are defined by La.R.S. 44:1(2)(a) as:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are “public records”, except as otherwise provided in this Chapter or the Constitution of Louisiana.
(Emphasis added.)
The State’s argument appears to be correct, if the OTRs manifests at issue were “prepared, possessed, or retained ... for performance of any business ... under the authority of the constitution or laws ... or ... regulation.” Defendants received payment for OTRs as documented in the manifests, so the OTRs manifests also appear to satisfy the definition of public records, if the money received was “paid by or received under the authority of the constitution or the laws of this state.”
Records prepared and maintained by private corporations have been determined to be public records. See Lewis v. Spurney, 456 So.2d 206 (LaApp. 4 Cir.1984), units denied, 457 So.2d 1183,458 So.2d 488 (La.1984), where the court held that records which “necessarily reflect business or transactions which concern” money received from the State of Louisiana are public records. Id. at 207.
^Defendants maintain that the trial court’s holding is correct. Additionally, they argue that a prior ruling by the trial court governs this issue. We agree. On May 4, 2000, Defendants filed a motion in limine, seeking an interpretation of the waste tire provisions of the SWRRA and DEQ regulations which form the basis for the State’s prosecution. Specifically, Defendants requested the trial court to interpret whether OTRs were included or excluded from the waste tire provisions cited above during the year 1997. The trial court granted Defendants’ motion in limine, holding that OTRs were not included in the waste tire provisions and, therefore, Defendants did not have to file manifests, invoices, monthly reports, or corresponding attachments with the DEQ. The State filed writ applications with this court and with the supreme court which *423 were denied. See State v. Robert Parker, Advanced Recycling, Inc., and James G. Trumps, an unpublished writ bearing docket number 00-985 (La.App. 3 Cir. 10/4/00) and an unpublished writ bearing docket number 00-3051 (La.1/26/01). Defendants assert they were not required to file or maintain any records pertaining to OTRs.
In response to discovery requests and in a joint stipulation submitted in conjunction with the motion in limine, the State admitted that OTRs were not included in the SWRRA or the DEQ regulations governing waste tires at the time in question and that DEQ paid for OTRs through a waste tire fund, even though it was not authorized to do so. At the hearing on the motion in limine, the State argued that DEQ’s actions were authorized pursuant to its authority “over waste, in general, and specifically, over waste that parish collection sites had to deal with,” explaining that the agency had developed a procedure for the disposition of and payment for OTRs.
In State v. Alfonso, 99-1546 (La.11/23/99); 753 So.2d 156, the constitutionality of a regulation adopted by the Wildlife and Fisheries Commission (Commission) which required the submission of information returns by mullet fishermen was at issue. The issue was “whether the Commission exceeded its delegated authority under Section 333 A by adopting reporting requirements, especially when the requirements are punishable in a criminal proceeding by a lifetime prohibition against earning a living by fishing mullet.” Id. at 162. In considering whether the Commission exceeded its authority, the court addressed the delegation of administrative and ministerial authority by the Legislature, stating:
Legislative power rests exclusively in the Legislature. This legislative power includes the power to create and define criminal offenses and their penalties. Primary legislative power, strictly speaking, may not be delegated, but administrative and ministerial functions may, by statute, be delegated to an agency in the executive branch.
[[Image here]]
Significantly, in this case, even when the Legislature has properly delegated to an agency certain administrative or ministerial authority, the regulations promulgated by the agency may not exceed the authorization delegated by the Legislature. State v. Domangue, 93-1953, p. 5 (La.App. 1st Cir.12/22/94), 649 So.2d 1034, 1038. An agency exercising delegated authority is not free to pursue any and all ends, but can assert authority only over those ends which are connected with the task delegated by the legislative body. [LaüRence H. TRIbe, AmeRican Constitutional Law, § 5-17 (2d ed.1988) ] The open-ended discretion to choose ends is the essence of legislative power; it is this power that the legislative body possesses, but its agents lack. Id.
Id. at 160,162. (Emphasis added.)
The State defended the Commission’s action, arguing that the regulation was promulgated pursuant to the “other provisions” phrase of La.R.S. 56:333(A) in order to fulfill its duties under another section which required the Commission to report | ¿information on mullet to the Legislature. The supreme court rejected the argument after determining that the Legislature’s directive to the Commission to “adopt rules to regulate the taking of mullet” did not include the authority to require mullet permit holders to file information returns. Id. at 162. (Emphasis added.)
The State’s argument here is essentially the same as in Alfonso, i.e., DEQ’s general authority over solid waste *424 authorized it to develop the procedure for OTRs. However, the State admitted that OTRs were not included in the SWRRA or the DEQ regulations and that DEQ was not authorized to pay for OTRs through the waste tire fund. Thus, by the State’s own admissions, DEQ exceeded its authority under the rationale of Alfonso.
We find that DEQ also exceeded the Legislature’s grant of authority under the clear language of the SWRRA. The SWRRA grants the secretary of DEQ the power and duty “[t]o adopt, by rules, such fees as may be necessary to administer the waste tire activities as provided in R.S. 30:2418.” La.R.S. 30:2413(A)(8). The rules regarding these fees must be adopted “in accordance with the Administrative Procedure Act.” Accordingly, even if the SWRRA’s general grant of power to DEQ authorized the payment of fees for OTRs, DEQ’s procedure exceeded the Legislature’s grant of authority because no rule was adopted in accordance with the Administrative Procedure Act.
In conclusion, we find that DEQ’s actions exceeded the authority granted to it by the Legislature and cannot serve as a basis for the offense at issue. The trial court’s grant of the motion to quash is affirmed.
AFFIRMED.
AMY, J., concurs in the result.